IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMALYN CHARMAINE CAMPBELL, | No. 2:14-CV-2386-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-motion for summary judgment (Doc. 17).

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on January 27, 2011. In the application, plaintiff claims that disability began on April 8, 2008. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on April 25, 2013, before Administrative Law Judge ("ALJ") Mark C. Ramsey. In a June 6, 2013, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): major depression disorder, anxiety disorder, and substance addiction disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: full range of simple unskilled work at all exertional levels; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on August 15, 2014, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's

decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ improperly rejected the opinions of Drs. Cleveland and Singer, as well as LuWanna Airheart, LMFT.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

### A.   Dr. Cleveland

As to Dr. Cleveland, the ALJ stated:

> . . .[I]n March 2013, treating professional, R. Cleveland, noted he had treated the claimant for 3 months (or since approximately December 2012). Mr. Cleveland indicated the claimant was diagnosed with depression and anxiety, and taking psychotropic medication to address these issues. The report showed the claimant underwent office visits once every 2-3 weeks (Ex. 15F).

The ALJ added:

> . . . Mr. Cleveland opined as follows: the claimant has mild impairment in the abilities to follow work rules, relate to co-workers, use judgment, maintain concentration/attention, and relate predictably in social situations. The claimant has moderate impairment in the abilities to deal with public, interact with supervisors, deal with work stresses, function independently, complete simple tasks, and behave in an emotionally stable manner. Mr. Cleveland advised the claimant is capable of work in a low

4

stress environment. He opined the claimant would be absent more than 3 times per month (Ex. 15F). This assessment is given little weight. First, it appears that Mr. Cleveland is not an acceptable source per 20 CFR 404.1513(a) and 416.913(a), as there is no degree set forth after his name. Secondly, Mr. Cleveland does not provide ample evidence to substantiate his extreme findings. In fact, aside from the claimant's diagnosis and medication(s), there is no reference to objective testing or clinical findings whatsoever. Additionally, the undersigned finds Mr. Cleveland's extreme limitations contrast with daily activities. Specifically, Mr. Cleveland found the claimant would be absent more than 3 times per month, which contrasts with the fact that she is able to care for herself nearly every day of the month. Lastly, the assessment contrasts with the claimant's treatment recommendations insomuch as she attended intermittent office visits for counseling and medication management.

The undersigned emphasizes at the time of the assessment, the claimant had attended (approximately) 3 office visits with Mr. Cleveland. Accordingly, his treatment history was quite brief, and not necessarily indicative of a longitudinal understanding of the claimant's condition.

The ALJ cited the following reasons for rejecting Dr. Cleveland's opinions: (1) he is not an acceptable source; (2) his opinion is unsupported; (3) his extreme limitations contrast with plaintiff's daily activities; (4) his extreme limitations contrast with plaintiff's conservative and intermittent care history; and (5) he did not have a longitudinal understanding of plaintiff's condition. Defendant concedes that the first reason is not supported by substantial evidence because, in fact, Mr. Cleveland is a medical doctor.[1] Plaintiff argues the remaining reasons are not supported by substantial evidence.

A review of the record reflects that Dr. Cleveland completed a "Medical Assessment of Ability to do Work Related Activities (Mental)" in March 2013. The report indicates that Dr. Cleveland treated plaintiff over a three-month period. For various findings, the form asks the doctor to report medical and clinical findings supporting the assessment. The

---

[1] Defendant states: "Although the ALJ mistakenly stated that Dr. Cleveland was not a medical doctor, this was harmless error as he provided specific and legitimate reasons for assigning Dr. Cleveland's opinion little weight (AR 22-23). The court agrees. See Stout v. Comm'r Soc. Sec., 454 F.3d 1050 (9th Cir. 2006). The court also agrees with defendant that this error did not result in application of the wrong legal standard to evaluation of Dr. Cleveland's opinions insofar as the ALJ articulated rationale applicable to acceptable treating medical sources.

doctor reported either no findings or indicated "see note" without providing any such note.

According to plaintiff, "see note" refers to treatment notes at pages 471, 478 482, and 488 of the record. Plaintiff states that these treatment notes "routinely discuss his observations of plaintiff's mental health symptoms." Contrary to plaintiff's characterization, however, these notes largely reflect plaintiff's subjective complaints. Where an examination regarding psychiatric issues is indicated in the notes, the observations are consistently unremarkable. For example, Dr. Cleveland reported on December 24, 2012, that plaintiff was appropriately dressed, did not appear anxious or withdrawn, and demonstrated no psychosis. Dr. Cleveland made the same observations verbatim on January 7, 2013, January 22, 2013, February 12, 2013, and March 5, 2013. Given that Dr. Cleveland's opinions are not supported by references to objective clinical evidence, the ALJ properly discounted them.

### B. Dr. Singer

As to Dr. Singer, the ALJ stated:

> . . .Dr. Singer reported symptoms of depression, difficulty with sleep, hearing voices, panic attacks, mood swings, social anxiety, and a history of substance abuse. Dr. Singer indicated the claimant was living alone in a studio apartment, and obtaining some assistance from her family. Clinical testing showed a full scale IQ score of 75, consistent with borderline intellectual functioning. The doctor noted the claimant has mild impairment in abstract reasoning and severe impairment in math computation. After examination, Dr. Singer diagnosed the claimant with depression. Dr. Singer reported the claimant had not sought mental health treatment, and encouraged her to do so (Ex. 12F).

The ALJ also stated:

> . . .In his assessment, Dr. Singer concluded the claimant was "unemployable;" however, [he] failed to discuss limitations in social functioning (Ex. 12F).

The ALJ added:

> . . .[E]xamining physician, Dr. Singer rendered a functional assessment, wherein he concluded the claimant was "unemployable" for a period of 6 months (Ex. 12F, page 3). This assessment is given little weight. First, it is broad and ambiguous, not expressing specific limitations, which would render the claimant "unemployable." Furthermore, it only addresses a

period of 6 months, which does not meet temporal requirements for a severe mental impairment under applicable regulations. Lastly, the assessment conflicts with Dr. Singer's report insomuch as he indicated the claimant was capable of living alone without any mental health treatment (at the time). Such evidence certainly suggests the claimant is at least capable of simple repetitive tasks.

A review of the record reflect that Dr. Singer prepared a "Consultation Summary" of three consultations with plaintiff in October and November 2012. For "Impressions," the doctor reported:

> Ms. Campbell's presentation is consistent with a diagnosis of depression. She experiences depressed mood nearly every day, sleep disturbances, diminished ability to concentrate, loss of energy, and daily feelings of worthlessness and guilt. In addition, while her mood can become quickly irritable with periodic bouts of anger, she also experiences social anxiety that can lead to panic episodes. Finally, these are paired with mildly limited cognitive ability.
>
> Ms. Campbell has not had any mental health treatment and has not been evaluated for medication. Given her history and profile she was encouraged to seek such treatment. In the interviews she displayed a number of positive qualities, including good conversation abilities and a generally pleasant personality. Her optimal functioning may be higher than she presently displays if she had treatment and training. Until she secures this assistance, given her profile, her likelihood of having a successful work experience is extremely problematic.

Dr. Singer also prepared a letter on October 15, 2012, in which he stated: "Given the information available to me at this time, Ms. Campbell appears presently unemployable."

On this record, the court finds that the ALJ properly concluded that Dr. Singer's assessment is vague and generalized. In particular, the doctor offers no specific opinions as to plaintiff's functional capabilities except the conclusory statement that plaintiff is "unemployable."

/ / /

/ / /

/ / /

/ / /

### C. Ms. Airheart

As to Ms. Airheart, the ALJ stated:

> In February 2013, treating professional, L. Airheart, M.S., reported the claimant had three counseling sessions from December 2012 and February 2013 at her facility. She advised the claimant was undergoing cognitive behavior therapy, and noted the claimant demonstrated reliability to attending scheduled appointments (Ex. 16F).

The ALJ also stated:

> In February 2013, treating professional, Ms. Airheart, opined the claimant's "current diminished capacity inhibits productivity in the workplace," and added the claimant demonstrated "unemployability" beyond a 30-day timeframe (Ex. 16F). This assessment is given little weight. It is broad and ambiguous, not expressing specific limitations, which would render the claimant unemployable. . . .
>
> In March 2013, Ms. Airheart rendered a functional assessment. In the report, she opined as follows: the claimant has mild impairment in the ability to complete simple repetitive tasks. She has moderate impairment in the abilities to follow work rules and functional independently. The claimant has marked impairment in the abilities to interact with others in the workplace, use judgment, deal with stress, maintain concentration, attention, behave in an emotionally stable manner, and demonstrate reliability. She is incapable of a lower stress job. She will be absent more than 3 times per month (Ex. 18F). This assessment is given little weight. First, as a marriage and family therapist, Ms. Airheart is not considered an acceptable medical source per 20 CFR 404.1513(a) and 416.913(a). Furthermore, her reports are inconsistent. Specifically, Ms. Airheart found the claimant has marked impairment in the ability to demonstrate reliability and will miss work more than 3 times per month. By contrast, Ms. Airheart specifically noted the claimant <u>was</u> demonstrating reliability in her report of February 2013 (Ex. 16F). Moreover, the assessment contrasts with the claimant's treatment recommendations insomuch as she attended intermittent office visits for counseling and medication management. Lastly, the assessment contracts with the claimant's own account of activities of daily living.
>
> The undersigned emphasizes at the time of the assessment, the claimant had attended a total of 3 office visits with Ms. Airheart's facility (Ex. 16F). Accordingly, Ms. Airheart's treatment history was quite brief, and not necessarily indicative of a longitudinal understanding of the claimant's condition.

/ / /

/ / /

/ / /

The record contains a February 20, 2013, report from Ms. Airheart. In the report she states that plaintiff attended three counseling sessions at her facility. Ms. Airheart also states:

> While Tamalyn demonstrates reliability by attending scheduled counseling appointments and a teachable spirit, in my opinion, her current diminished capacity inhibits productivity in the workplace. At this time, Tamalyn demonstrates unemployability that extends beyond the next 30 days. Due to the many contributing variables, that include medication management, I am unable to predict the duration of Tamalyn's current unemployability or future employment status at this time.

Ms. Airheart also completed a "Medical Assessment of Ability to do Work Related Activities (Mental)" on March 20, 2013. Ms. Airheart reported:

> Patient describes immobilizing fear and anxiety when interacting with others and when going out into the public. Ability to stay on task and to be self-governing is impaired by depressive symptoms and very high degree of anxiety. Patient lacks self-confidence and social skills necessary to work independently.

Ms. Airheart also stated:

> I have not observed patient in a task-oriented environment, however lack of self-confidence and low social skills would likely be problematic for complex job skills.

Ms. Airheart opined that plaintiff has marked limitations in her ability to demonstrate reliability and added:

> Personal appearance – Patient presents appropriate grooming and dress when attending sessions. Patient described panic, isolation, and depressive symptoms that interfere with daily routine – keeping her world very small and interactions with others are minimal.

As the ALJ noted, Ms. Airheart's reports are inconsistent with respect to plaintiff's ability to demonstrate reliability. In the February 2013 report, Ms. Airheart indicates that plaintiff is reliable in terms of keeping her appointments. In the March 2013 report, however, Ms. Airheart opines that plaintiff is markedly limited in her ability to demonstrate reliability. Plaintiff argues that the ALJ took the February 2013 statement out of the full context in which Ms. Airheart also stated that, despite plaintiff's ability to keep her appointments, plaintiff's "current diminished capacity inhibits productivity in the workplace." The court does

not agree.  The latter part of Ms. Airheart's vague statement that plaintiff's workplace "productivity" is "inhibited" is not inconsistent with her report of plaintiff's ability to reliably attend her scheduled appointments.

Given Ms. Airheart's inconsistent reports, the ALJ did not err in discounting her opinion.  The ALJ was also permitted to discount her opinions because Ms. Airheart is not an acceptable medical source.  Finally, as defendant correctly notes, the ALJ properly accounted for Ms. Airheart's brief treatment relationship with plaintiff.  See Crane v. Shalala, 76 F.3d 251 (9th Cir. 1996).

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 14) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 17) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 21, 2016

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE